IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL MOLDING CORP., a Minnesota corporation ) ) ) | |
| Plaintiff, ) ) | Case No. 08CV153 |
| v ) ) | Honorable Judge Ruben Castillo Magistrate Judge Susan E. Cox |
| MEADOWORKS, INC., an Illinois Corporation ) ) ) | |
| Defendant. ) | |

## INDEX TO UNREPORTED CASES

1. *Bell v. Bd. Of Trustess of the Harvey Firefighters' Pension Fund*, 2006 WL 1517772, *4 (N.D. Ill. April 5, 2006).

2. *Global Poly Inc. v. Fred's Inc.*, 2004 WL 532844, *2 (N.D. Ill. Mar. 11, 2004).

3. *Spizzirri v. Mortgage Elec. Registration Sys., Inc.*, 2003 WL 21640468, *3 (N.D. Ill. July 11, 2003).

4. *U.S. Bank Nat'l Ass'n. v. EMC-Lincolnshire, LLC*, 2003 WL 22048097, *7 (N.D. Ill. Aug. 28, 2003).

{1395990:}



EXHIBIT G



Slip Copy                                                                                                          Page 1

Slip Copy, 2006 WL 1517772 (N.D.Ill.)
**(Cite as: Slip Copy)**

C
Bell v. Board of Trustees of the Harvey Firefighters' Pension Fund
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
William BELL, Plaintiff,
v.
BOARD OF TRUSTEES OF THE HARVEY FIREFIGHTERS' PENSION FUND, et al. Defendants.
**No. 05 C 6742.**

April 5, 2006.

David Grayson Duggan, Law Offices of David G. Duggan, Chicago, IL, for Plaintiff.
Thomas Steven Radja, Jr., Richard J. Reimer & Associates, LLC, Hinsdale, IL, for Defendant.

*MEMORANDUM AND ORDER*

MANNING, J.

1. Background

*1 Plaintiff William Bell brought the instant two-count complaint alleging that the defendants violated 42 U.S.C. § 1983 and Article I, § 2 of the Illinois Constitution when they denied him pension benefits without due process of law. According to the complaint, defendant Richard Stockwell, president of the defendant Board of Trustees of the Harvey Firefighters' Pension Fund ("Board"), summarily suspended Bell's pension benefits without notice or a hearing when Stockwell learned that Bell had been appointed Harvey's Public Safety Fire Administrator. Bell claims that the summary termination was part of a pattern and practice of suspending pension benefits of African-Americans who had returned to work for the city of Harvey while not doing so for white pensioners who also had returned to work for Harvey.

At the time the instant action was filed, a complaint for administrative review was pending in the Circuit Court of Cook County seeking review of the Board's vote suspending Bell's pension benefits. The circuit court remanded the case for further factual support, and the original Board members voted to affirm their initial decision. The circuit court then reversed the Board's decision and remanded the matter for a new hearing before the Board. In the instant motion, the Board contends that this court should abstain from hearing this action based on the *Colorado River* abstention doctrine, *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). For the following reasons, the court finds that abstention is warranted and grants the motion.

II. Discussion

"Abstention from the exercise of federal jurisdiction is the exception, not the rule."*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).*Colorado River* abstention is appropriate when considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," support abstention in favor of a pending state court case. *Id.* at 817.Under *Colorado River,* only the "clearest of justifications" warrants dismissal. 424 U.S. at 819.

Before a court can consider whether exceptional circumstances justify a stay under *Colorado River,* it must first consider whether the federal action is parallel to the state or foreign proceeding. *See, e.g., Clark v. Lacy,* 376 F.3d 682,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                      Page 2

Slip Copy, 2006 WL 1517772 (N.D.Ill.)
**(Cite as: Slip Copy)**

685 (7th Cir.2004); *LaDuke v. Burlington N.R.R. Co.,* 879 F.2d 1556, 1559 (7th Cir.1989) (parallelism with respect to state and federal proceedings). The actions need not be identical to be parallel. *See, e.g., Lumen Construction, Inc. v. Brant Construction Co.,* 780 F.2d 691, 694 (7th Cir.1985). Instead, they must feature substantially the same parties litigating substantially similar issues. *See, e.g., Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1288 (7th Cir.1988).

The fact that the parties in the state and federal actions are not identical does not necessarily mean that the "substantially the same parties" test cannot be satisfied. *Lumen Construction,* 780 F.2d at 695. This is because a plaintiff cannot control the parallel nature of concurrent proceedings simply by naming different parties in the federal case. *Id.* The true measure of whether parties are substantially the same is whether the parties and their litigation interests in the concurrent cases are substantially similar. *Id.* at 694;*Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.,* 962 F.2d 698, 700-01 (7th Cir.1992) (where different parties in state and federal actions shared a common interest in a fee dispute, parties were "substantially similar").

*2 Similarly, the issues in the concurrent proceedings need not be identical to be substantially similar. Instead, issues are "substantially similar" when there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."*Lumen Construction,* 780 F.2d at 694. In determining whether issues are "substantially similar," the court must consider whether the different issues raised in concurrent proceedings filed by the same party share a common factual underpinning, so that the disposition of the state claims affects the disposition of the federal claims. *See id.*With these basic principles in mind, the court turns to the parties' arguments.

A. Are the Parties Parallel?

With respect to the parties, Bell is the plaintiff in both actions. Moreover, the Board is a defendant in both actions; however, individual board members are named in the instant action while they are not named in the state court administrative review action.

The absence of the individual board members from the state court case does not, in and of itself, destroy parallelism, as the Seventh Circuit has held that "the simple expedient of naming additional parties" does not necessarily allow a party to avoid the *Colorado River* doctrine. *Lumen Construction,* 780 F.2d at 695;*Rosser v. Chrysler Corp.,* 864 F.2d 1299, 1307 (7th Cir.1989). Instead, if a party is named in a federal action but is not named in a state action, the inquiry regarding the parallelism of parties blends into the inquiry regarding the parallelism of issues. This means that, if there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case," the presence of additional parties in a federal case will not destroy parallelism. *Lumen Construction,* 780 F.2d at 695. With this in mind, the court turns to an assessment of how resolution of the issues in the state court case will impact the claims raised by Bell in this case.

B. Are the Claims Parallel?

Bell contends that the claims are not parallel. According to Bell, the state court action involves only whether Bell had reentered active service as a firefighter within the meaning of the Pension Code. On the other hand, Bell contends that the instant action involves his allegations that the Board (and its then all-white members) deprived him of a property right without due process of law because of his race when it: (1) summarily suspended his benefits; (2) imposed on him the burden of persuasion that he had not reentered active service as a firefighter; and (3) returned the case to the board members who had suspended Bell's benefits even though those members had already retired from the Board.

The court notes that the state and federal complaints are both based on the same underlying conduct (i.e., the alleged wrongful denial of pension benefits)."Merely raising an alternative theory of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 3
Slip Copy, 2006 WL 1517772 (N.D.Ill.)
**(Cite as: Slip Copy)**

recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit."*Proctor & Gamble Co. v. Alberto-Culver Co.,* No. 99 C 1158, 1999 WL 319224, at *5 (N.D.Ill. Apr.28, 1999), *quoting Telesco v. Telesco and Mason's Materials, Inc.,* 765 F.2d 356, 362 (2d Cir.1985) (collecting cases). Thus, adding a new issue into a federal action "which could have been properly raised in a prior state court action does not insulate the federal action from attack under *Colorado River.*"*Id.; see also Clark,* 376 F.3d at 686-87 ("Just as the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action").

*3 Moreover, given that the claims in both actions arise from the denial of pension benefits, if the state court wins the race to judgment (which is likely, since it has a substantial head start-indeed, the Board asserts that a final hearing before the Board is set for March 30, 2006, less than two weeks away), the existence of that hypothetical state court judgment under the facts of this case could possibly create res judicata or *Rooker-Feldman* issues. *See Proctor & Gamble Co. v. Alberto-Culver Co.,* 1999 WL 319224, at *5 (collecting cases holding that parallelism turns on whether the federal defendants may be bound by the result in the state litigation based on collateral estoppel or the *Rooker-Feldman* doctrine). Indeed, as another court in this district has recently noted:

In several decisions, the Seventh Circuit has recognized that under Illinois law, a plaintiff can join a full-blown § 1983 claim to even a very limited, on-the-record judicial review of an agency decision. *See, e.g., Garcia* [*v. Village of Mount Prospect,* 360 F.3d [630] at 642 [7[th] Cir.2004] (administrative review of a denial of duty-related pension benefits by the police pension board bars subsequent Title VII and § 1981 claims by a Hispanic police officer alleging that this denial constituted retaliation and employment discrimination); *Manley v. City of Chicago,* 236 F.3d 392, 397 (7th Cir.2001) (*Rooker-Feldman* doctrine applies to bar a police officer's § 1981 and § 1985 claims following the full administrative review of the police board decision terminating him); *Durgins v. City of East St. Louis,* 272 F.3d 841, 843-44 (7th Cir.2001) (police officer's failure to raise free speech challenge in administrative review of a police board decision to terminate her for falsifying her credentials barred a subsequent § 1983 claim alleging that constitutional violation); *Hagee v. City of Evanston,* 729 F.2d 510, 511-12, 514-15 (7th Cir.1984) (judicial review of a zoning board decision halting construction barred a later § 1983 damages action alleging that the zoning board decision deprived the plaintiff of property without due process). In *Davis* [*v. City of Chicago,* 53 F.3d 801 (7th Cir.1995], the Court of Appeals observed that "we have long believed that Illinois permits persons to join constitutional claims under § 1983 with requests for administrative review.... [T]he Supreme Court of Illinois has endorsed our understanding of state law."53 F.3d at 803 (*citing Stratton v. Wenona Community Unit District No. 1,* 133 Ill.2d 413, 429-30, 141 Ill.Dec. 453, 551 N.E.2d 640, 646-47 (1990)).

*Girot v. Municipal Officers Electoral Bd. of City of Braidwood,* 05 C 419, 2006 WL 59393, at *6 (N.D.Ill. Jan.5, 2006). Accordingly, the court finds that the state court action and this action feature substantially the same parties litigating substantially the same issue and that these actions, therefore, are parallel.

C. Abstention under *Colorado River*

*4 If concurrent proceedings are parallel, the court can reach the merits of a motion to stay a federal case in favor of a pending state court or foreign action. Ten factors are relevant in deciding whether the circumstances are exceptional enough to support a stay: 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 4
Slip Copy, 2006 WL 1517772 (N.D.Ill.)
**(Cite as: Slip Copy)**

availability of removal; and 10) the vexatious or contrived nature of the federal claim. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 n. 2 (7th Cir.2005) (*citing Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir.1992)).

The determination of whether exceptional circumstances exist is committed to this court's discretion. *See, e.g., United States ex rel. Hartigan v. Palumbo Bros., Inc.*, 797 F.Supp. 624, 633 (N.D.Ill.1992). With respect to the *Colorado River* factors, "[n]o one factor is necessarily determinative" so "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required."*Colorado River*, 424 U.S. at 817. The weight of the factors is not fixed. Instead, it depends on the particular posture of each unique case. *See Moses H. Cone Memorial Hospital*, 460 U.S. at 16.

The first factor-whether the court has assumed jurisdiction over a res-is inapplicable as this is not an in rem action. The second factor-the inconvenience of the federal forum-favors abstention, as both lawsuits are pending in Illinois and Bell acknowledges that this court is as accessible and convenient as the state court.

Factor three-the desirability of avoiding piecemeal litigation-also favors abstention. First, in resolving the issues before them, both courts will have to address whether Bell was entitled to his pension benefits. Allowing both cases to proceed would lead to duplicative effort and potentially conflicting results. *See Proctor & Gamble Co. v. Alberto-Culver Co.*, 1999 WL 319224 at *5. Moreover, even if this court abstains and Bell opts to raise his § 1983 Illinois constitution claims in the state court action, he would not necessarily need to start afresh with a totally different action, as he may be able to amend his pleadings to add the claims raised in this case. Indeed, it would appear based on the excerpt from *Girot v. Municipal Officers Electoral Bd. of City of Braidwood,* 05 C 419, 2006 WL 59393, at *6, quoted on page 6 above, that Bell would want to raise the § 1983 claim in the state court action given the strong possibility of *res judicata* effect on the instant action.

*5 Factor four-the order in which the state and federal courts obtained jurisdiction-is yet another reason in favor of a stay, as the state court case has been pending since December 2003. Factor five asks whether federal law provides the rule of decision and looks to the source of the law governing the parties' dispute. While count I of the instant action alleges a § 1983 claim, which is a federal statute, the state court could resolve it. Further, count II of the instant action alleges a violation of the Illinois constitution, which Illinois courts are obviously in a favorable position to apply and interpret.

With respect to factor six-the adequacy of the state court action to protect Bell's rights-the Illinois state court action as it currently stands would not provide relief under § 1983 (including attorneys' fees and punitive damages), and thus favors not abstaining. Factor seven-the relative progress of the state and federal proceedings-weighs in favor of a stay given that Bell filed the state court action in 2003. While this court endeavors to resolve all cases before it as expeditiously as possible, the fact remains that the state court has a substantial head start.

With respect to factor eight-the presence or absence of concurrent jurisdiction-the state court can exercise jurisdiction over all of the claims raised by Bell in this action. Factor nine-the availability of removal of the state court action-dictates in favor of abstention given that there currently is no claim in the state court action providing for federal jurisdiction.

Finally, as top factor ten-the vexatious or contrived nature of the federal litigation-the court cannot conclude based on the record before it that the current litigation was instituted for improper purposes. Although the Board asserts to the contrary, this court disagrees.

Accordingly, the court concludes based on its review of the ten factors that most of the factors taken together weigh in favor of abstention. In short, after carefully balancing the *Colorado River*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 5
Slip Copy, 2006 WL 1517772 (N.D.Ill.)
**(Cite as: Slip Copy)**

factors "in a pragmatic, flexible manner with a view to the realities of the case at hand," the court exercises its discretion and finds that, even with the strong presumption in favor of jurisdiction, the facts and circumstances of this case justify the surrender of jurisdiction here in favor of the Illinois state court case.

III. Conclusion

The Board's motion to stay under *Colorado River* is granted. Proceedings in this case are stayed pending further order of court. *See CIGNA HealthCare of St. Louis, Inc. v. Kaiser,* 294 F.3d 849, 851-52 (7th Cir.2002) (when abstaining in favor of a parallel case, federal court should stay rather than dismiss its case).

N.D.Ill.,2006.
Bell v. Board of Trustees of the Harvey Firefighters' Pension Fund
Slip Copy, 2006 WL 1517772 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                                 Page 1
Not Reported in F.Supp.2d, 2004 WL 532844 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Global Poly Inc. v. Fred's Inc.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
GLOBAL POLY INC., an Illinois Corporation, Plaintiff,
v.
FRED'S INC., a Tennessee Corporation, Defendant.
No. 03 C 4561.

March 11, 2004.

Michael P. Connelly, Cory D. Anderson, Connelly, Roberts & McGivney, Chicago, IL, for plaintiff/counter-defendant.
Barry G. Bollinger, James Edward Abbott, Bollinger, Ruberry and Garvey, Chicago, IL, for defendant/counter-claimant.

*MEMORANDUM OPINION AND ORDER*

SCHENKIER, Magistrate J.
　*1 The plaintiff, Global Poly, Inc. ("Global Poly") has filed a motion (a) to dismiss or, in the alternative, stay the defendant, Fred's, Inc. ("Fred's"), counterclaims, and (b) to strike Fred's affirmative defenses (doc. # 11). For the following reasons, the motion to stay the counterclaims is granted; the motion to strike the affirmative defenses is granted in part and denied in part.

I.

　Global Poly has brought a two-count complaint against Fred's in connection with a business relationship that existed between the two parties. In Count I, Global Poly alleges a claim for an account stated, based on three invoices for products provided by Global Poly that Fred's has failed to pay. In Count II, Global Poly alleges a breach of contract as a result of Fred's alleged failure to pay those same three invoices, as well as for an alleged failure to pay for other goods ordered but not yet shipped. This complaint was originally filed in the Circuit Court of Cook County, Illinois and was then removed to the Northern District of Illinois pursuant to 28 U.S.C. § 1441(a), pursuant to this Court's diversity jurisdiction. In its answer and counterclaim, Fred's admits to withholding payment but claims it did so for justifiable reasons. In addition, Fred's raises five affirmative defenses: setoff, waiver, laches, estoppel and unclean hands.

　Fred's also asserts a three-count counterclaim against Global Poly and Tom Wolf, individually, as owner and president of Global Poly. Count I of the counterclaim asserts a claim for breach of contract; Count II asserts a breach of warranty claim; and Count III asserts a claim for non-conforming goods. Fred's counterclaims all are based on three purchase orders issued by Fred's to Strategic Merchandising Solutions ("SMS") in January, February and April 2002 (*see* Motion to Dismiss, Ex. B, Count I ¶¶ 8-10), and SMS's alleged failure to perform on those purchase orders (*Id.,* at Count I, ¶¶ 12-14; Count II, ¶¶ 17-20; Count II, ¶¶ 17-18). Fred's seeks to hold Global Poly and Mr. Wolf liable for alleged conduct of SMS, another company allegedly owned by Wolf, under a "piercing the corporate veil" theory.

　SMS (not a party here) has filed a complaint against Fred's that currently is pending in the Circuit Court of Cook County. In that complaint, SMS asserts a claim for account stated based on three invoices that SMS issued to Fred's (different than those from Global Poly that are at issue in this case), but that Fred's allegedly has not paid. In the *SMS* suit, Fred's has asserted a counterclaim against SMS that sets forth the same three contract claims alleged in Fred's counterclaims this case, based on the same allegations Fred's has made in this case, and that seeks the same monetary recovery that Fred's seeking in this case (*see* Motion to Dismiss, Ex. D, Count I, ¶¶ 4-6, 8-10; Count II, ¶¶ 12-15; Count III, ¶¶ 12-13). The only difference between Fred's counterclaims in the two cases is that here Fred's asserts a piercing the corporate veil theory to impose liability on Global Poly and Mr. Wolf along with SMS, but does not do so in the *SMS* case pending in state court.

II.

　*2 Global Poly argues that Fred's counterclaims should be dismissed based on 735 ILCS 5/2-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

619(a)(3), which states that an Illinois court may dismiss a pending action if "there is any other action pending between the same parties for the same cause." Fred's rejoinder is that Section 2-619(a)(3) does not apply to this case, based on *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272 (7th Cir.2003). Fred's is right: In *AXA*, the Seventh Circuit held that Section 2-619(a)(3) is a procedural rule for Illinois courts to follow, and that under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts may not dismiss a case arising under federal diversity jurisdiction on that basis. *AXA*, 347 F.3d at 276-78.

However, that determination does not end the matter, because Global Poly and Mr. Wolf argue in the alternative that the counterclaims should be dismissed or stayed under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under *Colorado River*, "a federal court may stay or dismiss a suit when there is a concurrent state court proceeding and the stay or dismissal would promote 'wise judicial administration.'" *AXA*, 347 F.3d at 278 (quoting *Colorado River*, 424 U.S. at 818). In deciding whether *Colorado River* abstention applies, a court first must consider whether two lawsuits are parallel, which means that "'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Id.* If that is so, then the court must consider ten factors in deciding whether to abstain. *Id.* "[T]he decision whether to defer to the state court is necessarily left to the discretion of the district court in the first instance." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Employing the analysis required under *Colorado River* and *AXA*, this Court finds that the underlying state court lawsuit and the case before us are parallel and that, on balance, the relevant factors weigh in favor of abstention.

III.

We address first the question of whether Fred's counterclaims in the state court and in this Court are parallel. Suits are parallel when *substantially* the same parties are litigating *substantially* the same issues. *AXA*, 347 F.3d at 278. "[T]he mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir.2001).

The underlying issues that are being litigated in Fred's counterclaims in both cases are substantially similar. The underlying facts involve purchase orders by Fred's to SMS for peg hooks and shopping carts on January 23, 2002, February 21, 2002, and April 2, 2002. In both cases, Fred's alleges that Fred's paid for these purchases, that the products supplied by SMS were defective, that Fred's notified SMS of the defects, but that SMS did not accept a return of the merchandise or repay Fred's.

\*3 The only difference between Fred's counterclaims in the two cases is that Fred's has sued only SMS in the state court action, but in this Court seeks to impose liability for the same conduct on Global Poly and Mr. Wolf on a theory that the corporate veil should be pierced. Central to this theory is that Global Poly and SMS are "merely business conduits or alter egos of Tom Wolf" (Motion to Dismiss, Ex. B. Count I, ¶ 15), which is tantamount to an admission by Fred's that it considers these parties to be "substantially similar." The fact that Global Poly and Mr. Wolf are not joined as parties in the state court case on a piercing the veil theory (although Fred's surely could have done so) does not preclude a finding that the two cases are substantially similar. *See Nimelias*, 250 F.3d at 518. Fred's counterclaims are based on the same set of underlying facts and issues regarding the products sold by SMS. Therefore, this Court finds that the suits are parallel.

IV.

We now turn to the ten factors that, under *Colorado River*, we must consider when deciding whether to stay or dismiss this case:
(1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained in the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00153 Document 10-8 Filed 02/12/2008 Page 9 of 20

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 532844 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

*AXA,* 347 F.3d at 278. When weighing these factors, we are mindful that abstention is only appropriate in "exceptional circumstances," *Colorado River,* 424 U.S. at 813, and that there is "a general presumption against abstention." *AXA,* 347 F.3d at 278.

In this case, the first and second *Colorado River* factors are irrelevant: the underlying claims do not involve property over which the state has assumed jurisdiction, and the state and federal courthouses are within a few blocks of each other. Likewise, the seventh and eighth factors do not affect the decision. Both cases are still in the initial stages, and both courts have jurisdiction over the respective claims (although the *SMS* case cannot be removed, since there does not appear to be diversity, Fred's could have brought its piercing the corporate veil claim against Global Poly and Mr. Wolf in that state court action).

A number of the remaining factors weigh in favor of abstention. The third factor weighs heavily in favor of abstention: we see no good reason for two courts to adjudicate the same underlying contract claims. Fred's argues that a favorable resolution in state court would not dispose of the claims before this Court because SMS may become insolvent, and Fred's would be forced to pursue Mr. Wolf separately under the piercing the corporate veil doctrine. However, Fred's has not suggested a reason why it cannot include that theory in the claim in state court and therefore avoid a separate trial in this Court on that issue. The counterclaim against Global Poly and Mr. Wolf will not be prejudiced by this Court abstaining, and if Fred's is able to recover damages from SMS, then the counterclaim in this case will be unnecessary.

*4 The fourth factor weighs slightly in favor of abstention, at best: Fred's filed its counterclaim in the *SMS* case 10 days before filing its counterclaim in this case. The fifth factor weighs in favor of abstention, since state law governs all of the separate counts of the counterclaim. The sixth factor also weighs in favor of abstention. The state court proceeding will allow Fred's to enforce any rights against SMS that may exist under the contract, or to collect damages if they are awarded. Again, Fred's contention that SMS may become insolvent, even if true, does not explain why the piercing the corporate veil doctrine could not also be asserted against Global Poly and Mr. Wolf in state court-whether as an affirmative claim in that lawsuit, or in supplementing proceedings if Fred's obtains a judgment against SMS but has difficulty collecting it. Finally, the ninth factor weighs in favor of abstention. The *SMS* case cannot be removed, and thus the inefficiency of duplicative proceedings cannot be avoided through that device.

The tenth factor weighs against abstention, because there is no indication that the federal claim is vexatious. However, that consideration does not carry the day for Fred's. We are mindful that application of *Colorado River* requires is more than simply tallying up the ten factors, and basing a decision of whether more of them support or undermine abstention. But here, the weight of the factors favor abstention, which would avoid piecemeal and duplicative litigation without depriving Fred's of a convenient and fully adequate forum to address the underlying contract claims (or the corporate veil claims, if Fred's chooses to pursue them in *SMS* ). After carefully weighing the factors and considering the presumption against abstention, the Court finds that *Colorado River* factors weigh in favor of abstention, which would promote " '[w]ise judicial administration," ' *Colorado River,* 424 U.S. at 818, (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)) by avoiding duplicative litigation.

The Seventh Circuit has consistently held that "a stay, not a dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine."*Selmon v. Portsmouth Drive Condo. Ass'n,* 89 F.3d 406, 409 (7th Cir.1996).*See also Rogers v. Desiderio,* 58 F.3d 299, 302 (7th Cir.1995); *LaDuke v. Burlington N. R.R. Co.,* 879 F.2d 1556, 1561-62 (7th Cir.1989); *Rosser v. Chrysler Corp.,* 864 F.2d 1299, 1308-09 (7th Cir.1988). The rationale for entry of a stay, rather than dismissal without prejudice, was articulated by the Seventh Circuit in the case of *Evans Transp. v. Scullin Steel Co.,* 693 F.2d 715, 717-18 (7th Cir.1982). This Circuit wishes to preserve a federal forum for the litigant who, but for the parallel state court proceeding, would be entitled to have its claims resolved here in the event that the state suit "wash[es] out"-even if the right to be in federal court is premised on diversity rather than federal subject matter jurisdiction. Although the case before us presents a slight wrinkle-here, we are asked to stay a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00153　　Document 10-8　　Filed 02/12/2008　　Page 10 of 20

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 4
Not Reported in F.Supp.2d, 2004 WL 532844 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

counterclaim rather than an entire case-we believe the rationale of *Evans* controls disposition of this motion: "[e]ven when abstention is justified, the federal suit should not be dismissed, ... if should be stayed."*Evans, 693 F.2d at 717*. Accordingly, the Court grants the motion to stay the counterclaims, but denies the motion to dismiss them.

V.

**\*5** A motion to strike under Federal Rule of Civil Procedure 12(f) is the primary procedure for objecting to an insufficient defense. *Van Schouwen v. Connaught Corp., 782 F.Supp. 1240, 1245 (N.D.Ill.1991)*. Motions to strike are generally disfavored, and "may be granted only if the defense is patently defective and could not succeed under any set of circumstances."*Carpenter v. Ford Motor Co., 761 F.Supp. 62, 65 (N.D.Ill.1991)*. An affirmative defense must notify the plaintiff of the nature of the defense. *Flasza v. TNT Holland Motor Exp., Inc., 155 F.R.D. 612, 613 (N.D.Ill.1994)*. If the affirmative defense is comprised of "no more than 'bare bones conclusory allegations,' " it should be stricken. *Id at 614*.A three-part test for examining an affirmative defense is outlined in *Bobbitt v. Victorian House, Inc., 532 F.Supp. 734, 737 (N.D.Ill.1982)*.

(1) Initially, the court will determine whether the matter is appropriately pleaded as an affirmative defense. Only matters that deserve a clear "no" answer will be stricken to make the pleadings more concise.

(2) If a matter may remain as an affirmative defense the Court will determine if it is adequately pleaded under the requirements of Rules 8 and 9. Any defense inadequately pleaded will be dismissed *without* prejudice to enable defendants to correct that technical deficiency.

(3) Any matter permitted to stand as an affirmative defense will be tested under a standard identical to Rule 12(b)(6). If it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint, the matter will be stricken as legally insufficient.

*Id. Cf. Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294-95 (7th Cir.1989)*.

Using this test, this Court finds that a set of facts exists for the defense of setoff that would defeat the complaint, so it will not be stricken. However, the affirmative defenses of waiver, laches, estoppel, and unclean hands are not adequately pleaded, and will be dismissed.

A.

" 'A 'setoff' is a 'counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim.' ' *Minalga v. Fid. Invs. Institutional Operations Co., Inc., No. 01 C 4173, 2002 WL 31527251, at \*2 (N.D.Ill. Nov.14, 2002)* (quoting BLACK'S LAW DICT. 1376 (7th ed.1999). A defense of setoff should not be stricken if the counterclaim could serve as a setoff against a judgment in favor of the plaintiff. *See Brizendine v. U.S. Gypsum Co., No. 91 C 6794, 1992 WL 159449, at \*2 (N.D.Ill. June 25, 1992)*. Fred's incorporated the allegations in the counterclaim into this defense by reference and alleged that SMS is liable for a setoff equal to the amount Fred's paid for defective goods. Fred's also alleges that Global Poly and SMS are so intertwined that they should be treated as the same party. The allegations put Global Poly on notice of the factual circumstances that allegedly give rise to a setoff. And, viewing the allegations in the light most favorable to Fred's, the allegations (if proven) could entitle Fred's to a setoff.

B.

**\*6** Waiver, laches, and estoppel all are affirmative defenses enumerated under Rule 8(c). Waiver involves a "voluntary, intentional relinquishment of a known right."*Ocean Atlantic Woodward Corp. v. DRH Cambridge Homes, Inc., No. 02 C 2523, 2003 WL 1720073, at \*8 (N.D.Ill. Mar.31, 2003)* (quoting *Int'l Ins. Co. v. Peabody Int'l Corp., No. 87 C 464, 1991 WL 23630, at \*3 (N.D.Ill. Jan. 23, 1991)*). Laches "bars a party's rights when the party has unreasonably delayed their assertion so as to cause prejudice to the opposing party."*Hawxhurst v. Pettibone Corp., 40 F.3d 175, 181 (7th Cir.1994)*. To plead estoppel, a defendant must assert: (1) that a party acted; (2) another party reasonably relied on those acts; and (3) the latter party thereby changed its position for the worse. *See, e.g., Bobbitt, 532 F.Supp. at 738*. Fred's answer contains only the conclusory statement that Global Poly's case is barred under the doctrines of waiver, laches and estoppel (Def.'s Answer at 4). The pleading fails to put Fred's even on notice of the conduct allegedly constituting waiver, laches or estoppel. Therefore, those three affirmative defenses will be stricken.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 532844 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

### C.

Unclean hands is properly raised as an affirmative defense. *See Ocean Atlantic,* 2003 WL 1720073, at *5; *Tome Engenharia E Transporrtes, Ltd. v. Malki,* No. 94 C 7427, 1996 WL 172286, at *11 (N.D.Ill. Apr.11, 1996). To assert a defense of unclean hands, Fred's must plead that Global Poly acted in a way that amounts to fraud, misconduct or bad faith. *Ocean Atlantic,* 2003 WL 1720073, at *5. If Fred's suggests that fraud occurred, Rule 9(b) requires that any allegations of fraud include the particular circumstances such as the time, place, and contents of the representation or omission. *Carpenter,* 761 F.Supp. at 66. Fred's pleading contains only the conclusory statement that Global Poly's claim is barred by the doctrine of unclean hands (Def.'s Answer at 4). This allegation fails to provide the basic notice required by Rule 8(a); therefore, this affirmative defense will be stricken.

### CONCLUSION

For the reasons set forth above, Global Poly's motion to stay or dismiss Fred's counterclaim (doc. # 11) is granted as to all counts; and the motion to strike the affirmative defenses (doc. # 11) is granted without prejudice with respect to the defenses of waiver, laches, estoppel and unclean hands, but denied as to the defense of set-off.

N.D.Ill.,2004.  
Global Poly Inc. v. Fred's Inc.  
Not Reported in F.Supp.2d, 2004 WL 532844 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21640468 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Spizzirri v. Mortgage Electronic Registration Systems, Inc.
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
Susan A. SPIZZIRRI, Plaintiff,
v.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., Defendant.
No. 03 C 2000.

July 11, 2003.

*MEMORANDUM OPINION AND ORDER*

ASPEN, J.

*1 Plaintiff Susan Spizzirri ("the plaintiff" or "Spizzirri") has filed a complaint against Defendant Mortgage Electronic Registration Services, Inc. ("the defendant" or "MERS"), alleging that the loan agreement she entered into with MERS violated the Illinois Interest Act ("Interest Act"). Currently at issue is MERS motion to dismiss or stay proceedings pursuant to the *Colorado River* abstention doctrine. For the following reasons, we deny the defendant's motion to dismiss and grant the defendant's motion to stay these proceedings pending resolution of parallel proceedings in the Circuit Court of Cook County.

*BACKGROUND*

On July 11, 2001, the plaintiff, Spizzirri, an Illinois citizen, entered into a loan agreement secured by a mortgage lien on her home with the defendant, MERS, a Delaware corporation with its principal place of business in Michigan. On October 24, 2002, MERS filed a foreclosure complaint in the Circuit Court of Cook County. In its complaint, MERS alleged that as of June 2002 Spizzirri was in default on her monthly mortgage payments. On March 19, 2003, Spizzirri filed her answer and affirmative defense in the Circuit Court. In these filings, Spizzirri asserted that MERS's claim was barred because the loan agreement violated Section 4.1a of the Illinois Interest Act ("Section 4.1a"), which provides in

relevant part that charges exceeding the stated interest rate for a loan "with an interest rate in excess of 8% per annum secured by residential real estate ... shall not exceed 3% of such principal amount."815 Ill. Comp. Stat. Ann. 205/4.1a (West 2003).

On March 19, 2003, Spizzirri also filed the instant complaint in federal court, alleging that the defendant knowingly violated Section 4.1a, and requests attorney fees, costs, and damages. On May 14, 2003, MERS filed a motion for summary judgment in state court,[FN1] arguing that the Interest Act is preempted by the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA).*See*12 U.S.C. § 1735f-7a(1).[FN2] On May 15, 2003, MERS filed a motion to dismiss or stay the federal proceedings. MERS points to the pending state action and the *Colorado River* abstention doctrine in support of its motions.

FN1. The hearing on this motion was scheduled for June 24, 2003.

FN2. These prerequisites are not listed here, as they are irrelevant to this opinion.

*ANALYSIS*

The *Colorado River* abstention doctrine provides that a district court may stay an action when a concurrent, parallel state or federal proceeding exists. *See Colorado River Water Conservation Dist. V. United States,* 424 U.S. 800, 817 (1976).*Colorado River* abstention is appropriate only in exceptional circumstances where it would achieve wise judicial administration by conserving judicial resources and comprehensively disposing of litigation. *See id.*We must apply a two-part test to determine whether *Colorado River* abstention is appropriate. *See Admin. Comm. v. Gauf,* 188 F.3d 767, 772 (7th Cir.1999). First, the suits must be parallel. *See Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.,* 962 F.2d 698, 700 (7th Cir.1992). Second, we must balance ten factors to determine whether exceptional circumstances justify abstention. *See LaDuke v. Burlington N.R.R.,* 879 F.2d 1556, 1559 (7th Cir.1989); *see also Starr v. Levin,* 2002 WL

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1941375, *3 (N.D.Ill.2002).

*2 State and federal actions are parallel if they involve substantially the same parties litigating substantially the same issues. See *Caminiti & Iatarola*, 962 F.2d at 700. The parties and issues need not be identical. See *AAR Int'l Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 518 (7th Cir.2001). Furthermore, the mere presence of additional issues or parties does not preclude finding the suits parallel. See *id.* Both the state and federal cases at issue involve the same parties-Spizzirri and MERS. Moreover, both cases seek to resolve substantially the same issue: whether the defendant violated the Illinois Interest Act. The mere presence of an additional federal issue in the state action - the supposed preemption of the Illinois Interest Act by the DIDMCA-does not preclude these suits from being parallel. See *AAR Int'l Inc.*, 250 F.3d at 518. We therefore find that the state and federal actions involving Spizzirri and MERS are parallel for purposes of *Colorado River* abstention.

Having found that the state and federal actions to be parallel, we must determine whether exceptional circumstances exist to justify the surrender of jurisdiction. See *LaDuke*, 879 F.2d at 1559;*Starr*, 2002 WL 1941375 at *3. In so doing, we must balance the following factors: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. See *Starr, 2002 WL 1941375 at *3*. We apply these factors pragmatically and flexibly, recognizing that no single factor is determinative. See *id.*

Neither party disputes that Illinois has assumed jurisdiction over the property in question, and both proposed forums are located in Illinois, thus the first factor is neutral as to abstention. The next factor is the inconvenience of the federal forum. Although MERS is a Delaware corporation with its principal place of business in Michigan, it initially brought suit against Spizzirri in Cook County. WE fail to see how proceeding in the federal court in Chicago presents a greater hardship on a foreign litigant than proceeding in the state court in Chicago. Thus, this factor does not weigh either in favor or against a stay.

The third factor, the desirability of avoiding piecemeal litigation, favors a stay in the federal action. The focus of this factor is on avoiding duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue. See *Caminiti & Itarola*, 962 F.2d at 701. Absent a stay of the federal action, the question of whether MERS violated the Illinois Interest Act will likely be decided in both the federal and state suits, presenting a threat of inconsistent rulings. See *Starr*, 2002 WL 1941375 at *4. Therefore, the likelihood of piecemeal litigation in the federal action favors a stay.

*3 The fourth factor is the order in which jurisdiction was obtained. The Circuit Court of Cook County obtained jurisdiction when MERS filed their complaint in October 2002, nearly five months before Spizzirri filed the federal suit. Furthermore, the state action, which is currently at the summary judgment stage, has progressed further than the federal action, which is relatively undeveloped. See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) (priority should not be measured exclusively by which claim was filed first but instead in terms of how far the suits have progressed).See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983); see also *Starr*, 2002 WL 1941375 at *4. This factor, therefore, favors abstention.

The fifth factor is whether the actions are governed by state or federal law. While MERS invokes federal law in its summary judgment motion of the state action, the main issue in both sets of proceedings-whether MERS violated the Interest Act-involves state law. Thus, this factor also favors staying the federal suit pending resolution of the state action.

Next we address the adequacy of the state court action in protecting the plaintiff's rights. If Spizzirri prevails in proving MERS violated the Interest Act, she will be relieved of payments on which she defaulted, regardless of whether resolution comes in state or federal court. In her federal complaint Spizzirri also requests damages and attorneys fees-remedies she could not acquire in state court where she is a defendant and has not counterclaimed. See 815 Ill. Stat. Ann. 205/6 (West 2003). We note, however, that Spizzirri's rights would not be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

permanently prejudiced by a stay. *See Starr,* 2002 WL 1941375 at *5. Following resolution of the state court action Spizzirri could move to lift the stay and pursue this action further, subject to applicable principles of res judicata and collateral estoppel. *See id.* Therefore, this factor only minimally weighs against a stay.

The next factor is the relative progress of the state and federal proceedings. As previously stated, the state action was filed five months before this federal action and a motion for summary judgment is currently pending. Meanwhile, the federal suit is still in the formative stages. Thus, this factor favors a stay. The eighth factor, whether the state or federal court has jurisdiction over the suit, has no bearing on our decision because it is undisputed that both the state and federal courts have jurisdiction.

The ninth factor is whether the state court action is removable. The parties have not briefed the issue of removability, though it appears that Spizzirri could have removed the state court action on diversity grounds. Spizzirri had thirty days from the filing of MERS's initial complaint to remove the case, but did not do so. *See* 28 U.S.C. §§ 1441, 1446. If Spizzirri wished to litigate this suit in federal court, removal of the state court action would have been the most efficient and prudent course available. Thus, the ninth factor weighs in favor of a stay. There is no evidence to support or rebut that Spizzirri filed her federal claim for vexatious or contrived purposes, the final factor in our balancing test. Therefore, this factor is not significant to our analysis. Because the ten factors outlined in *Colorado River* are neutral or weigh in favor of a stay, we find that exceptional circumstances exist to justify abstention.

## CONCLUSION

*4 For the reasons discussed above, we hereby stay these proceedings pursuant to the *Colorado River* abstention doctrine pending the completion of the Cook County proceeding. This case will recommence upon written motion of any party at the conclusion of the Cook County proceedings. The defendant's motion to dismiss is denied.[FN3]

> FN3. To support its motion to dismiss, MERS points to Illinois substantive law, which provides that involuntary dismissal may be based on the existence of "another action pending between the same parties for the same cause," provided the defendant timely files a motion for dismissal. 735 Ill. Stat. Ann. 5/2-619(a)(3); *see also Schiller v. The Packaging Store, Inc.,* 690 F.Supp. 711, 713 (N.D.Ill.1988). Because we grant MERS' motion for a stay of these proceedings, we deny as moot its motion to dismiss.

It is so ordered.[FN4]

> FN4. We will monitor the progress of the state court proceeding at status hearings before this court unless Spizzirri moves to voluntarily dismiss this case. The next status date in open court will be January 15, 2004, at 10:30 a.m.

N.D.Ill.,2003.
Spizzirri v. Mortgage Electronic Registration Systems, Inc.
Not Reported in F.Supp.2d, 2003 WL 21640468 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22048097 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

U.S. Bank Nat. Ass'n v. EMC-Lincolnshire, LLC  
N.D.Ill.,2003.  
Only the Westlaw citation is currently available.  
United States District Court,N.D. Illinois, Eastern Division.  
U.S. BANK NATIONAL ASSOCIATION, Plaintiff,  
v.  
EMC-LINCOLNSHIRE, LLC, Defendant.  
**No. 03 C 4692.**

Aug. 28, 2003.

Alexander Terras, Timothy Scott Harris, Steven V. Hunter, Piper Rudnick, Chicago, IL, for plaintiff.  
Thomas F. Sax, Lauren Blair, Pedersen & Houpt, P.C., Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

LEINENWEBER, J.  
*1 Before the Court is Defendant EMC-Lincolnshire, LLC's ("EMC") motion seeking dismissal or, alternatively, a stay of this action. For the reasons stated below, the Motion to Dismiss is denied, but the Motion to Stay is granted.

I. *BACKGROUND*

On January 2, 2001, Plaintiff U.S. Bank National Association ("U.S. Bank") made two loans to EMC-the first for $2,162,000, the second for $725,000 (later increased to $915,000)-each evidenced by a promissory note (the "Promissory Notes"). Each Promissory Note was secured by a separate mortgage (the "Mortgages"), as well as certain collateral listed in a Commercial Security Agreement (the "CSA") consisting of (i) all furniture, fixtures, inventory, machinery and equipment identified on Exhibit B of the CSA and (ii) all building materials and fixtures, parts and appliances located or placed in, upon or adjacent to the real property identified in Exhibit C of the CSA (collectively, "Collateral"). Under the terms of each Promissory Note, EMC's failure to make any payment when due would be considered an event of default, which in turn would trigger U.S. Bank's right to, among other things, declare all outstanding principal and accrued but unpaid interest due and payable, and to take possession of and/or sell the Collateral.

In August 2002, EMC failed to make a payment when due on the second loan; in September 2002, EMC failed to make a payment when due on the first loan. Since then, EMC has not made any installment payments on either loan. At some point after September 2002, U.S. Bank declared the Promissory Notes in default. On October 30, 2002, U.S. Bank initiated a lawsuit in Illinois state court (the "State Action") against EMC, its guarantors, and certain other parties with a claimed interest in the real property covered by the Mortgages, including Aspen Grille-Lincolnshire, LLC ("Aspen Grille"), seeking foreclosure on the real property and a money judgment against EMC and its guarantors. U.S. Bank's complaint in the State Action did not specifically reference the Collateral or seek relief against it. On January 3, 2003, Aspen Grille filed a counterclaim against U.S. Bank and EMC.

The State Action is currently pending, with a trial date set for August 27, 2003. Several substantive motions have been filed thus far in the State Action, including U.S. Bank's January 22, 2003 Motion for Summary Judgment. EMC filed a Motion to Strike the Motion for Summary Judgment, which the state court granted on April 9, 2003, holding that California law applied to U.S. Bank's claims. On April 23, 2003, U.S. Bank filed an Amended Motion for Summary Judgment. On May 16, 2003, EMC filed a Cross-Motion for Summary Judgment based on certain defenses under California foreclosure law. On June 29, Aspen Grille filed its own Motion for Summary Judgment, seeking the resolution of certain priority of claims issues and foreclosure.

On July 7, 2003, U.S. Bank initiated suit in this Court (the "Federal Action") seeking (i) an injunction prohibiting EMC from using the Collateral and (ii) replevin of the Collateral. In response, EMC filed the present Motion seeking dismissal or, alternatively, a stay of this action.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00153   Document 10-8   Filed 02/12/2008   Page 16 of 20

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 22048097 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

II. *DISCUSSION*

A. Motion to Dismiss

*2 In requesting a dismissal, EMC invokes 735 ILCS § 5/2-619(a)(3), a statute that provides for involuntary dismissal of a suit under certain circumstances. In pertinent part, that statute states that a "Defendant may, within the time for pleading, file a motion for dismissal of the action ... [upon the ground that] there is another action pending between the same parties for the same cause."735 ILCS § 5/2-619(a)(3). EMC contends that dismissal is appropriate because the Federal Action is between the same parties and concerns the same cause as the State Action. (Mot. at 5.) U.S. Bank responds that California law, rather than Illinois law, applies to this case by virtue of the choice-of-law clauses contained in the Promissory Notes, the CSA and the Mortgages. (Resp. at 2.) U.S. Bank further argues that, even if Illinois substantive law applied here, the criteria of § 2-619(a)(3) have not been satisfied.

In a federal diversity action such as this one, the Court must apply the substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Land v. Yamaha Motor Corp.,* 272 F.3d 514, 516 (7th Cir.2001), including that state's choice-of-law rules; *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Nelson v. Sandoz Pharm. Corp.,* 288 F.3d 954, 963 n. 7 (7th Cir.2002). EMC argues that § 2-619(a)(3) is substantive and should be applied here. As to whether § 2-619(a)(3) should be applied, EMC is mistaken.

Although "[c]onsiderable debate exists among the courts in this district as to whether § 2-619(a)(3) is substantive or procedural,"*AXA Corp. Solutions v. Underwriters Reinsurance Co.,* 02 C 3016, 2002 WL 31260009, at *9 (N.D.Ill. Oct.9, 2002), the Court need not reach that question, as Illinois substantive law does not govern this dispute. Rather, the parties have expressly agreed to the application of California law in the Promissory Notes ("This Note shall be governed by and construed in accordance with the laws of the State of California."(Promissory Notes at 2)), the CSA ("This Agreement shall be governed by and construed in accordance with the laws of the State of California."(CSA at 4)), and the Mortgages ("[T]his Mortgage shall be governed by, construed and enforced in accordance with the laws of the State of California, except and only to the extent of procedural matters related to the perfection and enforcement by [U.S. Bank] of its rights and remedies against the Property, which matter shall be governed by the laws of the State of Illinois."(Mortgages at 8)). Illinois state courts will respect and enforce a choice-of-law clause so long as the law chosen is not "dangerous, inconvenient, immoral, [ ]or contrary to the public policy of Illinois."*Vencor, Inc. v. Webb,* 33 F.3d 840, 844 (7th Cir.1994) (internal quotation marks omitted). EMC does not contend that the choice-of-law clause in this case would transgress Illinois public policy, and the Court itself discerns no basis for such a claim. Accordingly, the Motion to Dismiss pursuant to 735 ILCS § 5/2-619(a)(3) is denied.

*3 As a final point, the Court notes that EMC raised in its reply brief for the first time certain arguments that California state law might also prohibit maintenance of concurrent lawsuits. Because those arguments were raised for the first time in reply, they are deemed waived and were not considered by the Court. *James v. Sheahan,* 37 F.3d 1003, 1008 (7th Cir.1998) ("Arguments raised for the first time in a reply brief are waived.").

B. Motion to Stay

In the alternative, EMC, invoking the abstention doctrine articulated in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), requests an order staying the instant action pending final resolution of the State Action. EMC claims that the actions are parallel, in that they involve the same parties and the same essential issues, and that an application of the factors set forth in *Colorado River* should result in a stay. (Mot. at 4.) Echoing its response to the Motion to Dismiss, U.S. Bank counters that the two actions are not parallel in that (i) many additional parties are joined in the State Action, and (ii) "the two cases seek very different relief" (Resp. at 10), *i.e.,* the State Action seeks a money judgment and foreclosure of certain real estate, whereas the Federal Action seeks replevin of, and an injunction covering, the Collateral (which is made up of personal property). U.S. Bank also argues that under an application of the *Colorado River* factors, abstention would be inappropriate in any event. (Resp. at 13-15.)

Generally, the mere "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00153   Document 10-8   Filed 02/12/2008   Page 17 of 20

Not Reported in F.Supp.2d                                                                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 22048097 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

jurisdiction."*McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910). Indeed, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress.*Colorado River*, 424 U.S. at 817. The primary duty of the district court is to exercise the jurisdiction vested in it by law; "the presumption is against abstention." *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 10 F.3d 425, 430 (7th Cir.1993); *see Colorado River*, 424 U.S. at 819-20 ("[O]nly the clearest of justifications will warrant dismissal" of federal action in deference to concurrent state court proceeding.); *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 6 F.3d 1184, 1189 (7th Cir.1998); *Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 549-50 (7th Cir.1997)."The many factors to be considered in deciding whether to postpone exercising jurisdiction make the decision, in the last analysis, a matter committed to the court's discretion."*Microsoftware Computer Sys., Inc. v. Ontel Corp.*, 686 F.2d 531, 537 (7th Cir.1982), *overruled on other grounds, Gulf Stream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). However, "[i]f there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation."*AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir.2001).

*4 All that said, in "exceptional circumstances" a federal court may abstain from hearing a suit and await the outcome of parallel proceedings as a matter of "wise judicial administration." *Colorado River*, 424 U.S. at 813, 817;*see Admin. Comm. v. Gauf*, 188 F.3d 767, 772 (7th Cir.1999); *Sverdrup Corp.*, 125 F.3d at 549. When applied under appropriate conditions, this abstention technique conserves judicial resources by allowing a suit to be comprehensively resolved in a single forum. *Sverdrup Corp.*, 125 F.3d at 549;*see Colorado River*, 424 U.S. at 817 ("[T]he general principle is to avoid duplicative litigation.").

Determining the propriety of abstention under the *Colorado River* doctrine involves a two-step inquiry. The first step asks whether the federal and non-federal proceedings are parallel. *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir.1999); *AAR Int'l, Inc.*, 250 F.3d at 518. This step is a threshold step; if the actions are not parallel, the *Colorado River* doctrine does not apply and the inquiry comes to an end. See *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir.1998); *J.I.K. Realty Co., Inc. v. Steward*, 87 C 2839, 1989 WL 165114, at *4 (N.D.Ill.Dec.28, 1989). The second step, if it is reached, involves balancing a host of judicially prescribed factors. The Court will discuss each step in turn.

*1. Parallel Proceedings*

Suits are parallel if "substantially the same parties are contemporaneously litigating substantially the same issues in another forum."*Calvert Fire Ins. Co. v. Am. Mut. Reins. Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir.1979). Suits need not be substantively identical in all their particulars to be found parallel. *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700, 701 (7th Cir.1992) (cases "substantially the same" despite additional claim in federal court because they litigate the same "basic issue"); *see Rossi Distributors, Inc. v. Lavazza Premium Coffees Corp.*, 01 C 9271, 2002 WL 1611575, at *2 (N.D.Ill. July 17, 2002); *Spizziri v. Mortgage Elec. Registration Sys., Inc.*, 03 C 2000, 2003 WL 21640468, at *2 (N.D.Ill. July 11, 2003) (cases parallel despite presence of additional federal claim in federal suit). The presence of additional issues will not necessarily stave off abstention-ultimately, the question is not whether the suits are formally symmetrical, but whether there is a "substantial likelihood" that the non-federal litigation "will dispose of all claims presented in the federal case."*Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir.1988) (internal quotation marks omitted); *see Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 567, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1984); *In re Chicago Flood Litig.*, 819 F.Supp. 762, 764 (N.D.Ill.1993) (To determine if cases are parallel, court must ask "whether the parties may be bound by the result in the state litigation under principles of collateral estoppel or issue preclusion.").

*5 Under these standards, it is clear that U.S. Bank's Federal Action is parallel to its State Action. U.S. Bank and EMC are the only parties to the Federal Action and are, of course, also parties to the State Action. Although there are some nine additional defendants in the State Action, this "does not affect our determination," since staying the Federal Action would not risk excluding any parties from the litigation. *Jacobson v. City of Chicago*, 233

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00153    Document 10-8    Filed 02/12/2008    Page 18 of 20

Not Reported in F.Supp.2d                                                                                   Page 4
Not Reported in F.Supp.2d, 2003 WL 22048097 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

F.Supp.2d 1001, 1007 (N.D.Ill.2002); see *AAR Int'l, Inc.,* 250 F.3d at 518 (The "mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel."); *cf. Admin Comm. v. Gauf,* 188 F.3d at 772.

Moreover, despite U.S. Bank's strenuous assertions to the contrary, the two actions will require litigation of substantially the same issues. In each action, U.S. Bank is making an identical breach-of-contract claim, namely, that EMC has committed an event of default under the terms of the Promissory Notes by not making required payments. True, U.S. Bank seeks different *remedies* in each action for the alleged breach-a money judgment and foreclosure of real property in the State Action, and replevin of, and an injunction covering, the Collateral in the Federal Action-but the essential legal issues that would give rise to either remedy are identical. Indeed, if the State Action results in an adjudication that EMC has not breached the Promissory Notes, or that the Promissory Notes are otherwise unenforceable, the Federal Action will be moot. *Cf. Caminiti and Iatarola, Ltd.,* 962 F.2d at 701.

### 2. Colorado River Factors

In the second step of the *Colorado River* analysis, the Court must consider an array of different factors to determine whether the requisite "exceptional circumstances" are present that would justify abstention. *Colorado River,* 424 U.S at 818-19. The Supreme Court set forth four such factors: (1) whether the state court has assumed jurisdiction over the property at issue; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent fora. *Id.* "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* In subsequent cases, the Supreme Court has identified at least four additional factors to be weighed: (1) the source of governing law, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23-26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); (2) the adequacy of the state court action to protect the federal plaintiff's rights, *id.* at 26-28; (3) the relative progress of the state and federal proceedings, *id.* at 21-23; and (4) the presence or absence of concurrent jurisdiction, *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 666, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). The Seventh Circuit has also given weight to such factors as the availability of removal, *Microsoftware Computer Sys. ., Inc.,* 686 F.2d at 537, and the vexatious or contrived nature of the federal claim, *Am. Mut. Reinsurance Co.,* 600 F.2d at 1234,*noted with approval in Moses H. Cone Mem'l Hosp.,* 460 U.S. at 17, n. 20;*see generally, Lumen Constr. Co.,* 780 F.2d at 694-95.

*6 The first factor, whether the state court has assumed jurisdiction over the property at issue, appears to weigh in favor of abstention. Although the State Action formally seeks relief only against the real property covered by the Mortgages, the Mortgages also expressly grant U.S. Bank a security interest in the Collateral that is the subject of the Federal Action. (*See* Mortgages at 1 ("In addition, [EMC] grants to [U.S. Bank] a Uniform Commercial Code security interest in the Personal Property [defined to include essentially the same personal property as the Collateral]...."); *Id.* at 2 ("The word 'Mortgage' means this Mortgage between [EMC] and [U.S. Bank], and includes without limitation all assignments and security interest provisions relating to the Personal Property...."); *Id.*("This Mortgage, including ... the security interest in the ... Personal Property, is given to secure payment of the Indebtedness...."); *Id.* at 6 ("This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures of other personal property....").) Given the expansive reach of the security interests granted in the Mortgages-covering, as they do, both the real and personal property of EMC-the state court, in assuming jurisdiction over the real property, can be considered to have implicitly taken jurisdiction over the Collateral, as well. After all, the "Personal Property" identified in the Mortgages is defined to include "all equipment, fixtures, and other articles of person property now or hereafter owned by [EMC], and now or hereafter attached or affixed to the Real Property...." (Mortgages at 2.) The State Action will involve interpretation of the terms and conditions of the Promissory Notes and Mortgages, as well as the crucial determination whether EMC is in breach and whether U.S. Bank is entitled to relief under those contracts. The first factor, therefore, appears to favor abstention.

The second factor is the inconvenience of the federal forum. Both parties concede that any inconvenience would be the same whether the action

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22048097 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

was pending in federal or state court. It thus weighs neither for nor against abstention.

The third factor is the desirability of avoiding piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."*Day v. Union Mines, Inc.*, 862 F.2d 652, 659 (7th Cir.1988) (internal quotation marks omitted); see *Midwest Dental Prod. Corp. v. Kinetic Instruments, Inc.*, 89 C 7289, 1990 WL 19973, at *7 (N.D.Ill. Feb.23, 1990). Because the Federal Action and State Action involve substantially the same parties and substantially the same issues, there is a great danger of piecemeal litigation. Simultaneously litigating the factual and legal questions surrounding EMC's alleged breach of contract and U.S. Bank's entitlement to relief risks "duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue[s]" in these cases, and would create an unseemly incentive for the parties to delay in the forum which appears less favorable to it in order to take advantage of the collateral estoppel effects of the other. See *Caminiti and Iatarola, Ltd.*, 962 F.2d at 701;*LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir.1989). Accordingly, this factor weighs heavily in favor of abstention.

*7 The fourth factor, the order in which jurisdiction was obtained by the concurrent fora, similarly weighs in favor of abstention. The State Action was filed in October 2002, whereas the Federal Action was filed in July 2003, mere weeks before the state court was to rule on the summary judgment motions filed in the State Action.

The fifth factor, the source of governing law, also counsels in favor of abstention insofar as there is no issue of federal law raised in the Federal Action. The Seventh Circuit has made it clear that district courts "are not free to treat the diversity litigant as a second-class litigant ... [by] allow [ing] a weaker showing of judicial economy to justify abstention in a diversity than in a federal question case."*Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir.1982). However, "the absence of federal issues removes one countervailing factor which might otherwise override the concerns of avoiding piecemeal litigation."*J.I.K. Realty Co., Inc.*, 1989 WL 165114, at *6 (internal quotation marks omitted); cf. *Microsoftware Computer Sys., Inc.*, 686 F.2d at 531 (court may consider abstention where there is no "peculiarly federal interest" rendering federal court action preferable to state action.) Here, the absence of a federal question in the Federal Action, when considered along with all of the other *Colorado River* factors (and particularly factor three), militates in favor of abstention.

The sixth factor is the adequacy of the state court to protect this federal plaintiff's rights. Despite U.S. Bank's protestations, this factor does not affect the balance. Although U.S. Bank has chosen to seek a different form of relief in this Court-*viz.*, the Federal Action seeks an order of replevin and an injunction against the Collateral, whereas the State Action seeks a money judgment and foreclosure against the real property covered by the Mortgages-each action nonetheless turns on the very same predicate questions of fact and law (*i.e.*, has EMC defaulted under the Promissory Notes and does that breach give rise to a remedy?). Those issues can just as effectively be resolved in the state court as here. U.S. Bank would appear free either to seek a remedy against the Collateral in the State Action by supplementing its prayer for relief in its state court complaint, see *Droen v. Wechsler*, 271 Ill.App.3d 332, 208 Ill.Dec. 59, 648 N.E.2d 981, 984 (Ill.App.1995) ("A circuit court abuses its discretion if it refuses to allow a plaintiff to amend his complaint when a cause of action can be stated if the complaint is amended."); 735 ILCS § 5/2-616, or "[f]ollowing resolution of the state court action [U.S. Bank] could move to lift the stay and pursue this action further, subject to applicable principles of res judicata and collateral estoppel,"*Spizzirri v. Mortgage Elec. Registration Sys., Inc.*, 03 C 2000, 2003 WL 21640468, at *3 (N.D.Ill., July 11, 2003) (quoting *Starr v. Levin*, 02 C 2258, 2002 WL 1941375, at *5 (N.D.Ill. Aug.21, 2002)). On balance, the Court holds that this sixth factor is neutral at best.

*8 The seventh factor, the relative progress of the two cases, points toward abstention. This factor favors the court whose proceedings are furthest advanced. See *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21. The Supreme Court has stated that, among other factors to be weighed in the overall abstention calculus, district courts can take account of whether there has been an "absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss."*Colorado River*, 424 U.S. at 820;see *Spizzirri*, 2003 WL 21640468, at *3 (state action filed five months before federal action warranted stay where state action had summary judgment motion pending and federal action was still

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22048097 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

in "formative stages"). Here, the state court is currently preparing to rule on summary judgment motions filed by three different parties in the State Action. This Court has only entertained pleadings at an initial level, including the Complaint and an associated Motion for Replevin, and the present Motion to Dismiss or Stay. The seventh factor therefore weighs in favor of abstention.

Neither party contests that the eighth and ninth factors, the availability of concurrent jurisdiction and removal, respectively, are not particularly relevant in this case. And while there is not enough information in the record to decide EMC's claim under factor ten (whether the Federal Action has been brought for vexatious or contrived purposes), the Court need not reach that question as enough of the *Colorado River* factors already strongly counsel in favor of abstention, and not one factor counsels against it. When all of the factors are considered together, it is evident that the "exceptional circumstances" envisioned by the *Colorado River* Court are present in this case and that abstention is the appropriate outcome.

Although *Colorado River* itself involved an order of dismissal, the Supreme Court has reserved the question of whether a stay or dismissal is the appropriate procedure for abstention. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28; *San Carlos Apache Tribe*, 463 U.S. at 570 n. 21. However, the Seventh Circuit has consistently held that abstention is properly implemented through a stay, rather than through dismissal. *See LaDuke*, 879 F.2d at 1561-62; *Lumen Constr., Inc.*, 780 F.2d at 697-98; *Evans Transp. Co.*, 693 F.2d at 717-18. Accordingly, the Court grants EMC's Motion to Stay this action pending final resolution of the State Action.

*CONCLUSION*

For the foregoing reasons, EMC-Lincolnshire's Motion to Dismiss is DENIED, but its Motion to Stay is GRANTED. Accordingly, this action is STAYED pending final resolution of the parallel state action currently pending in Illinois state court in the 19th Judicial Circuit in Lake County under the caption *U.S. Bank Nat'l Assoc. v. EMC-Lincolnshire, LLC*, case number 02-CH-1813.

IT IS SO ORDERED.

N.D.Ill.,2003.  
U.S. Bank Nat. Ass'n v. EMC-Lincolnshire, LLC  
Not Reported in F.Supp.2d, 2003 WL 22048097 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.